May it please the Court, my name is Gregory Katz. I'm here on behalf of the United States. The appellants today will be dividing their time among three counsel, who will take ten minutes each, and we would like to collectively reserve six minutes for rebuttal. May it please the Court, the voluntary recitation of the Pledge of Allegiance in public schools does not violate the Establishment Clause. I'd like to begin by addressing the rationale of the District Court that this Court's prior decision in Newdow, which the Supreme Court reversed for lack of prudential standing, is a binding Establishment Clause precedent on the merits. And then, time permitting, I'd like to address the rationale, the merits rationale of the Newdow panel, that the recitation of the Pledge is akin to the prayer held to be unconstitutionally coercive in Lee. With respect to the precedent point, whatever may be the case with respect to reversals or vacatures on other grounds generally, the salient point here is that this Court's Newdow decision was reversed for lack of prudential standing. And both the Supreme Court and this Court have made clear that the existence of prudential standing bears on the proper exercise of subject matter jurisdiction. This Court said in Scott v. Pasadena that our jurisdiction is circumscribed not only by the constitutionally imposed rules of Article III, but also by the judge-made rules of prudential standing. Consistent with that general principle, the Supreme Court in Elk Grove, in reversing on prudential standing grounds, said that it was improper, improper for this Court to entertain Mr. Newdow's claim in light of his lack of prudential standing. And it's a little bit difficult to reconcile the proposition that was improper for this Court to reach the merits with the district court's conclusion that the merits resolution is nonetheless a binding precedent. Now the district court, to overcome all of that, relied on the sequencing rules under the Steele Co. decision. Nothing in those rules undercuts the key proposition that prudential standing bears on the exercise of subject matter jurisdiction. In a footnote in Steele Co., the Supreme Court held that in very limited circumstances, courts could decide merits issues before prudential standing issues, but only on the theory that what the, with respect to the issue being discussed, the particular merits issue under consideration, whether there was a cause of action under a federal statute, essentially overlapped and merged into the prudential standing inquiry of whether the plaintiff was in the zone of interest under the statute. And the Supreme Court said that given the essential merging of the two issues, in that circumstance only, a court could do a merits issue, decide a merits issue, before a prudential standing issue. None of that fairly elaborate, complex discussion would have been necessary if prudential standing were simply a merits issue that could be decided in whatever sequence a court wanted. There are some lower courts, including the Eleventh Circuit, in the decision cited by the District Court, which have treated prudential standing as subject to the same hypothetical jurisdiction rules that applied to Steele Co., that applied to Article III jurisdiction before Steele Co. and recognized a limited ability to decide merits issues before prudential standing issues when the merits issues are significantly easier and the outcome is unchanged. I'm not sure I agree with those decisions, but the key points for this Court's consideration are that the existence of that doctrine, like the pre-Steele Co., Article III doctrine, does not render the standing question any less jurisdictional, number one. And number two, whatever the proper scope of hypothetical jurisdiction with respect to prudential standing, the one thing that no court has ever done is hold that a court may assume prudential standing in order to rule in favor of the party invoking the subject matter jurisdiction of the Article III court, and certainly no court may render a decision on the merits when Article III jurisdiction is, in fact, lacking. Mr. Katsas, you've gone without a question so far. Why don't you get to the other point in your argument? I have one question for you. Assuming you're correct and that it is not binding, do you agree it has persuasive value? No, I don't think it does, Judge Reinhart, and that brings me to my second point with respect to the merits of the prior panel decision. The theory on which this panel rested was that the recitation of the pledge is without going to the merits, I'm just asking in as a matter of general principle and legal doctrine, if an opinion is vacated on the grounds that there's no standing, is there any – is that totally to be disregarded? The vacated opinion? Yeah. I'm assuming it's not binding. Correct. Yeah. It could be consulted for whatever persuasive value it has or doesn't have, just as any non-binding opinion could, which then brings us to the question – Are you familiar with any cases that say what weight you give to a vacated opinion? I'm familiar with cases that say vacated opinions have zero precedential value. No, I know that. I don't know why – I'm trying to get beyond precedential value. You're not aware of any cases – I'm not aware of any. I think they would be akin to decisions in other circuits or district court decisions that you could either find persuasive or not. The reason why, with respect, the prior panel opinion is not persuasive is that the recitation of the pledge in public schools is not akin to the prayer at issue in Lee. In the case that Lee relied on that gave birth to the prohibition on prayer in public schools, namely Engel, the Supreme Court itself drew a fundamental distinction between prayer, which it said was obviously inappropriate in public school classrooms, and patriotic exercises such as saying the – reciting the Declaration of Independence, singing officially espoused anthems like the – Let me just alert you that you are now beginning to encroach on your colleague's time, which is perfectly fine. I am. So let me just say that Engel makes – Engel itself made clear that students in civics class could be encouraged through discussion of documents like the Declaration of Independence, which presuppose a supreme being as a first principle's justification for our system of limited government, democracy, and individual rights, and recitation of singing of the national anthem, which presupposes and acknowledges the existence of a god. And I don't think the Establishment Clause inquiry turns on stanza one versus stanza four. Students could be encouraged to embrace those documents. They couldn't be compelled under Barnett. They could be encouraged. Now, the question is whether anything in Lee changes any of that. The issue before you is the line between prayer and patriotic exercises. Isn't one of the issues one of coercion, of young school children who feel coerced to recite under God? With respect, Judge Nelson, the issue is the classification of the pledge either as a prayer like the one held to be coercive in Lee or a patriotic exercise like the ones approved in Engel and – And what in Lee goes beyond the use of under God in – I think what Lee – Lee is significant. If you think of – if you think of the question of prayer in public schools, Judge Reinhart, Lee does not have anything – does not have any bearing on the question, what is or is not a prayer. It has bearing on the question, what is or is not school? And Lee holds that a graduation exercise is more like classroom instruction than like, say, voluntary extracurricular activities in cases like Good News Club. Lee addresses – Lee addresses the nature of a graduation ceremony. It does not address the line between prayer and appropriate patriotic exercises which have been recognized as permissible by court decisions and validated by 200 years of unbroken tradition. What about – yes, so Lee says a graduation ceremony is an important part, important event to students. Right, and therefore – As is certainly everyday participation when you open your day is an important part. So that – Oh, absolutely, but – They're the same. Absolutely. So then what is it that makes Lee a violation of the Constitution where it mentions God once in the same – in a similar format? It says, God of the free, hope of the brave, and then goes on about the legacy of America and doesn't mention God again. And then in the benediction, it also mentions God once and says, oh God, we are grateful to you. The entire passage in Lee is directed to God and gives thanks to God throughout, Judge Reinhart, one, two, three, four times at the end of every invocation, the rabbi is giving thanks to God. A prayer is a direct address to the divine that is fundamentally different from standing at attention, not to an altar but to the flag of the United States of America, pledging allegiance to the country and then describing the country among other things as bearing a relation to God akin to the one posited by Thomas Jefferson when he invoked the existence of God as a justification for rebelling against Great Britain and instituting a system of democracy and limited government. I know you don't want to keep – I'll try your next co-counsel on this. Thank you. Good morning, your honors. May it please the court. My name is Terrence Cassidy. I represent the Rio Linda Union School District and this morning we respectfully submit that the district court was incorrect because the decision by this court in New Dow 3 was not binding precedent. We believe that this court should review the pledge of allegiance with respect to the school district policy of allowing daily recitation of the pledge by willing students to be constitutional and not violative of the establishment clause. I would like to comment on your honors' earlier question, Judge Reinhart, about the persuasive value of the New Dow 3 decision. It is our position that it has no persuasive value and that is because that decision is null and void. Based upon the lack of jurisdiction of this court in deciding that, if you were to give persuasive value to that opinion, then that would be a fostering of allowing advisory or hypothetical opinions. And I believe the Supreme Court, taking great lengths to say that it should stay its hand in deciding important constitutional issues, weighs against there being any persuasive value of that decision. So your view is, in general, that when a decision is vacated for lack of standing, it has no value? Correct, Your Honor. It becomes a nullity. Thank you. With respect to the constitutionality of the Rio Linda Union School District policy allowing for daily recitation of the pledge by willing students, we respectfully submit that while there is no certain test defined with respect to how to determine whether there is a violation of the establishment clause, there being many separate tests evolved over time by the courts, we find that the pledge policy in this case meets all of those tests. Let me just ask you a question. Even if we assume that reciting the Pledge of Allegiance is a patriotic exercise, how is pledging allegiance to a nation under God not a religious act? Well, Your Honor, while there is some religious content in the pledge, we have to take the overall context. And that's what was stressed, I believe, by Justice O'Connor in her recurring opinion in Elk Grove. But likewise, we look to all the different various cases that have been compared against other types of claimed establishment clause violations, the pledge has been found to be constitutional and non-violative. Perhaps that is because it's ceremonial deism, but more importantly, I think for the context of our case, is that the school district policy reflects an overall educational curriculum with respect to the state education code that is set forth in the joint excerpts of record that establish that throughout the learning period of kindergarten through twelfth grade, our students in California learn about the various aspects of being civilians and our civil society as well as patriotism and loyalty to our country. Would it be any less patriotic if the words under God were removed? Not necessarily, but what we would look to is we'd be leaving out an important element of our founding fathers, which was set forth in the Declaration of Independence. And that is, there are certain unalienable rights that have been fostered upon us by a divine creator. We cannot escape that. In the context of the school district curriculums that's set forth in the education code, we find that in eleventh grade, in fact, the students do study the Declaration of Independence and particularly study the fact that there are unalienable rights based upon a divine creator. So we can't escape the fact that God has been traditionally part of our country, that it was the original rights in humans that... As Mr. Newdale pointed out, there's no doubt that at the time of the founders, they were talking about a Christian God. So what if he said in the Declaration of Independence, under a Christian God, if we're talking about history? Well, I think, Your Honor, two points. One, we're talking a more modernized version of the pledge, which we believe over time, over the past 50 years having been recited, that it loses some of the religious character that might have been referred to by the founders and even those found in the 54 Act. In fact, similar to the Sunday closing laws, we find that there has been some dilution of that effect of a religious content. What we look to is the fact that students are taught on a daily basis to provide loyalty and patriotism to our country. And it is the context in which they do so that is the importance in this and the teaching curriculum by the teachers, that in fact it becomes constitutional and not a violation of the Establishment Clause in this case. So I'm not quite sure I understand what that is. As Judge Nelson said, if you didn't have under God in there, you'd have all the patriotic and loyalty, all of that chauvinistic characteristics that you discussed, that would all be there. What under God adds to it is something in the reference to, as I understand from the government in the last case, an understanding to our historic religious tradition under which this was all done. I suppose I would answer it this way, Your Honor, that exposure to the fact that God has been recognized as part of the tradition and history of our country is not a coercive effect on a student. Well then what's wrong with saying under a Christian God if we're talking about the history of our country and when we adopted the Declaration of Independence and the Constitution? But I believe, I would respectfully submit, Your Honor, that in fact the Barnett analysis cures any potential evil that could occur because students are allowed to opt out. We're not coercing them. That's a different question. Is it coercive if you're required to stand there and keep silent and be singled out by your classmates as an atheist? I thought Justice Kennedy answered that quite clearly in Weissman. I think not, Your Honor, and I believe that clearly we know now from the Elk Grove decision by the majority that this is a, the Pledge of Allegiance is a patriotic exercise and not a prayer. Therefore, you never reach the issue of the coercive level that was addressed by the court. How could we know that? I thought there was no standing to decide that. Well, Justice Stevens announced in his majority amendment that it is I mean, if there's no standing, you tell us it doesn't mean anything. Well, it was important enough that the majority believed that in announcing its decision, it needed to make that point clear, perhaps for lower courts. But if there was no standing, is it possible that they announced a rule of law when there was no standing in the case? I believe that they can, through their dicta, announce what they believe is important to the decision of the case. I can't decide for the Supreme Court. I can only reflect How can it be important to the question of standing? Well, maybe it's just persuasive. I believe it is both persuasive, but I believe this court takes due deference to prior Supreme Court decisions. And I would respectfully submit that based on Lynch, based on County of Allegheny, and I would respectfully submit based on the analysis previously by the Seventh Circuit in Sherman, by the Fourth Circuit now in Myers Are you still talking about what's coercive when you just stand by silently or are you now off on a different subject? No, I was wrapping up a little bit because of my eight minutes running, Your Honor. But I would say coerciveness depends upon the context. And in this case, it is a teaching context. And if atheists do opt not to say it or Jehovah's Witness opt not to say it, the teachers are compelled to use and to bring the students together and teach tolerance and acceptance, which is exactly what they do and have done since the decision in Barnett. And we think that's appropriate. I reserve the rest of my time. Thank you, Your Honor. May it please the court. If you use your full eight minutes, there will be one minute left, but we'll give your side five minutes for rebuttal. Thank you very much, Your Honor. Kevin J. Hassan for the defendant interveners. I'd like to focus the time that I have, if I may, on Judge Reinhardt's line of questions about the Christian God. What does what does God add to the patriotic exercise and so forth? And it's it's a long answer to the short question, I'm afraid. It's the time of the Republic, before the revolution and after the revolution. One of the consuming questions was how it was that we would secure our individual rights. And of course, the the solution that people came to was to embrace the natural rights theory. Natural rights theory at the time universally was based on God, who was the source of those rights. But it wasn't the Christian God. And it wasn't the Jewish God. And it wasn't the Muslim God. It was the philosopher's God, precisely because it was necessary to make an argument from reason alone as to why individual rights must be respected, precisely because an argument from religion alone would never would never do. And the colonists had seen that fail many times over. Rhode Island failed to establish religious liberty based on a religious proposition. Pennsylvania failed to establish religious liberty based on a religious proposition. Be precise because that had failed. They needed to base this philosophical argument on the philosopher's God. Who is the philosopher's God? That is the God that ever since the time of Aristotle going up through the Middle Ages and the time of the philosophical systems, and still some today, could be known by reason alone. Their belief was that just the application of good philosophy to good hard-nosed facts, one could come to the conclusion that there is a God who existed and that he was the creator of things. One could not, under this model, acquire any knowledge of who he was or what he would require of people. Right. He was described as an unknowable essence by some. Indeed. Thought thinking himself. And is that a religious God or a non-religious God? Well, Your Honor, it's it's probably ridiculous to talk about a non-religious God in some some sense of abstraction, but it's a political philosophy. It's a category in political philosophy. And they want to embark and they want to call upon the philosopher's God precisely because he can be argued to be known by reason alone. And they're therefore limited to what can be known by reason alone. Were they to make the claim one nation under Jesus, they'd be making a religious claim. They'd be saying we have the benefit of revelation and faith and clergy and scriptures and traditions. And God is not a religious figure. The philosopher's God is not a religious figure for purposes of the Establishment Clause, Your Honor. Well, is it a religious figure for other purposes? For purposes of bestowing rights, I suppose, Your Honor. It's a philosophical concept, and the philosopher's God was all there was. Now, this was not just a throwaway line in the Declaration of Independence. May 12th or May 1776, before the Declaration of Independence, Madison was writing his Declaration of Rights for the Commonwealth of Virginia and based the equivalent of the Bill of Rights for Virginia on natural rights theory based on the philosopher's God. Along came Jefferson with his Declaration of Independence doing exactly the same thing. And it is not the Christian God because this God is known philosophically. It's self-evident that we were created and endowed by our creator. The argument that it's self-evident is not an appeal to scripture, an appeal to religious authority. It's an appeal to reason. Well, just what is the philosopher's God? You say it's a reasoned product, but what is it? Or what is it not? It's nothing that you would want a God to be most of the time. It's a God who has no revelations, no rituals, no clergy, no scriptures. Just the conclusion that a rational man, a rational woman could reach that there is, based on my existence or my finding of the existence of beauty and so forth, there is a creator. The creator is, what is a creator? The creator has created everything and by the shape of the creation, we can determine that people have rights. And we put it in Thomas Jefferson's famous line, because almighty God hath created the mind free, he goes on to argue that... If it's strict evolution, is that a God? I'm afraid I don't understand the question, Judge Rennie. Well, if the world just evolved naturally and we came from fish or whatever to human being, all of that, it just happened through the forces of science, is that a God? There are philosophers who would say that there is a causal principle behind that and the philosopher's God would be alive and well and living in evolution. Who said that because the universe exists, something caused it to exist. You could give that name God or Mr. X or the creative force or whatever. Which is indeed what they did. That includes just straight natural sciences. Planets that were up, exploded, gases came, the earth evolved from all these gases and then we went through generations of various animal species, ended up with man. Those forces, natural forces of gas, explosions, all of that, that is God. Your Honor, however any individual believer in the philosopher's God wants to conceive of that argument, the fact remains that the philosopher's God was the God that they were referring to. That's why you never see things referring to Jesus or to Krishna or whatever. Mr. Hanson, can I ask you a question? Of course, Your Honor. Is it your, let's get back a little bit more to what the cases say. Is it your position that an objective observer seeing the Pledge of Allegiance in a class, a reasonable man, the objective observer, would have an ambiguous view of the use of God? It could be religion, religious use with clergy, scriptures, hierarchy, or it could be your philosopher God? No, Your Honor, I'd say the objective observer would know it's the philosopher's God because the objective observer is charged with knowing all the background.  Well, if you were only steeply, steeply, steeply steeped in the Supreme Court's... Including the seven-year-old child who's compelled to go through this exercise or to stand and see his classmates do it? The seven-year-old child is not the objective observer, Your Honor. The seven-year-old child's parents, the objective observer, that's the good news case. The tradition went on from the Declaration, went on through the fight for disestablishment in Virginia, which the Supreme Court has said is so vital for understanding the First Amendment. Madison's memorial remonstrance was based on an argument from the philosopher's God. Jefferson's bill for establishing religious freedom is an excellent example. It proceeded from the argument that, whereas Almighty God hath created the mind free, so forth and so on. And what happened on the floor when that bill was passed, was being enacted, was one of the other legislators made a motion from the floor to amend the bill to insert the words Jesus Christ into it. The bill failed and the amendment failed and Jefferson in his autobiography was gleeful, saying they tried to make it sectarian and we succeeded in showing that it was... Let's talk about the bill when the pledge was passed, when you put under God into the pledge in the McCarthy era in the 1950s and what was said on the floor then was we faced a godless enemy in Russia where I guess they didn't believe in these scientific forces. They didn't believe in the philosopher's God and we had to show that Americans, by saying this every day, proved that we were not a godless atheistic nation. I beg to differ, Your Honor, reading legislative history is usually a depressing exercise, I have to say, but this time it's actually very enlightening. There were statement after statement on the floor of the dignity of the human person and why the dignity of the human person is protected in the United States because we hold our rights to be located in a place high above the government's reach, coming from a source prior to and higher than the state that the state must respect. Our rights are guaranteed to us, the government might violate them from time to time but can never repeal them, whereas in the Soviet state, the state is the be-all and end-all, the state is the source of rights and what the state giveth, the state can taketh away. There are stray comments, jingoistic comments, there always are stray jingoistic comments. In the chaplaincy that the Supreme Court cited in upholding Marsh v. Chambers, the eight first chaplains in the United States, the model that they used for saying what a chaplaincy should be, were all of the same congregationalist faith and they all prayed explicitly Christian prayers in Jesus' name. The motivations of an individual legislator are not the same thing as the purpose of the statute that's the Mergen's case. I should stop you because you've gone into two minutes of the rebuttal already. We'll give your side five minutes anyway, but we could go on all day, this is very interesting. Thank you. I'm Michael Newdow for the respondents, I'm the same guy from the last case. We'll give you five minutes, we'll give the other side five minutes. Thank you. In Shelton v. Tucker, the Supreme Court stated clearly that the vigilant protections of constitutional freedoms is nowhere more vital than in the community of American schools. They then said in Edwards v. Aguilar that we have been particularly vigilant in monitoring compliance with the Establishment Clause. We're talking today about in this case about in the school environment asking little children to stand up, led by their government agent teacher, amidst all their friends, look at that flag, place your hand over your heart and affirm that we are a nation under God. Mr. Newdow, specifically in this case we have one remaining plaintiff, Roe Child 2, correct? And the parent. And the parent. The parent's affidavit, as I remember it in this case, that was the basis of the preliminary injunction, was that the child was being harmed by being indoctrinated, that's the word that was used, indoctrinated in a system of belief in which he did not share. All right, okay. Now, as I read AR6115, which is the policy of Rio Linda, the child can refuse to participate in this exercise on personal reasons. There's no indication that there's any compulsion of the type used in Barnett. There's no $50 fine for the child not saying the pledge, right? Now, what's wrong with the child stepping outside the classroom and not participating in the pledge under the facts of this case where there is no allegation or any factual basis that the child would feel like an outsider or that being an outsider would cause any psychological damage to this child where the sole claim of injury is indoctrination? I suppose that was poor draftsmanship on my part and I'd ask to amend the complaint. No, it wouldn't be a complaint, it would be amended in affidavit. Okay. All I would respond to is the idea of compulsion and coercion which was mentioned previously and that the... Those two concepts are quite different. Compulsion is you have to say the pledge or else you get fined $50. Exactly. Coercion is what Lee v. Wiseman says occurs in the structure of a school prayer to a child who either says or does not say the school prayer at graduation ceremony. I think that's exactly correct. But I would point out just to follow up on that since the other side said this wasn't coercive that it clearly is under the ruling of Lee v. Wiseman and as Justice Thomas stated that if we... The pledge policy in most respects poses more serious difficulties than the prayer at issue in Lee and Justice Thomas also stated unequivocally as a matter of our precedent the pledge policy is unconstitutional. But he would overrule Lee v. Wiseman. He would and he would also apparently uphold the pledge but this Court doesn't have that luxury. You have to follow the precedent of the Supreme Court and he made it clear that the precedent of the Supreme Court is that this is unconstitutional. What about Oak Grove and Lynch? Excuse me? And the Supreme Court said that the words under God in the pledge do not violate the Establishment Clause in both of those cases. Well, the Supreme Court didn't rule on it in Oak Grove and it was again an issue of dicta in Lynch where they didn't have any briefing whatsoever. Let me ask you about coercion here. You have a little fourth grader and everybody else says it and doesn't want to say it. We have the Jehovah's Witnesses cases where the children are privileged not to say the pledge at all and there are some studies. I didn't see any in the excerpts of the record about whether or not those children were damaged in any way or felt discriminated against or felt prejudiced or their classmates thought less of them. Do you have any evidence or anything about any of those things or is there anything in the record that I missed? The record is so huge I'm not sure what I missed. I believe there is a reference to the briefs that were in the first Oak Grove case in which there is social science data that shows that in fact children are coerced and are damaged and I think what's probably best is the atheist and other freethinkers brief that was submitted to this court where you have a number of children who said this really damaged me and put that into words how they were damaged. So I think that's clearly the case. I hear it all the time. Children are out on the playground and the other kids are picking on them oh how come you didn't say this in the pledge. This is damaging. Imagine if you were a small child. Imagine you're an atheist child or do it the other way around. Imagine you're a Christian child. But two points on that Mr. Newdow. First of all there were specific allegations or actually proof in the Oak Grove case of the harassment of children because they were atheists. That doesn't occur in this case number one. Number two how is that injury redressable by a federal court and the injury is from one child to another not by the government to the child. Correct but the Supreme Court has made it clear that there is a stigmatic injury that can be affected and how else would you measure a stigmatic injury. As a matter of fact I believe in your case and parents involved in community schools and your dissent I think you wrote that. But the stigma is not by the school. The stigma is by the fellow students. But what's the harm there. The harm comes from the fellow students as a result of being told by the school. That's a causal connection unproven by the evidence. Okay. Is there any question at this point in our history with all our cases. I don't know what the evidence was that the graduating students in Lee versus Weissman were harmed by having to stand and listen to a prayer. I don't know whether they filed affidavits saying oh we're psychologically ruined at our graduation or didn't Justice Kennedy make it clear what everybody understands that if you're forced to attend a prayer session as a student and you have to remain silent that that's a violation of your constitutional rights because it has an effect on young children. Isn't that fairly clearly established in our law by now or do we have to establish it every time a case comes up. Do we have to re-establish that. Yes. And I wish I had just used that to answer Justice Beyer. Judge Beyer. I agree sir. That's what's called the lifeline. Okay. Thank you. Again I would refer to the neutrality test. Well first let me just mention that as far as the philosophy discussion that was just had before me. Concepts concerning God or a supreme being of some sort are manifestly religious. These concepts do not shed that religiosity merely because they are presented as a philosophy or as a science. That's from Edwards v. Aguilar. Justice Powell concurring. So I think that's been addressed. If we look through the tests I mean how do we make these determinations. Again they said that it passes every test. I didn't hear any analysis. I can't conceive of how it passes any of the Supreme Court's tests. It certainly fails the neutrality test which again the Supreme Court has said is the touchstone of our Establishment Clause jurisprudence. This is in the public schools, the Supreme Court in nine out of nine cases. Every single time they've addressed the issue of whether or not there's any religious indoctrination in the schools. They said you can't do it. It doesn't have to be prayer. I just want. When you start mentioning statistics my mind I know baseball season's over but my mind goes to statistics. You mentioned nine out of nine cases. What's the lineup of mentions of the Pledge of Allegiance by Supreme Court justices and pro and con as whether they're constitutional. Have you run those statistics? I probably have in the past. I don't recall the numbers. I think it's 14 to nothing. It's 14 to nothing again just like it was in the last case. It's people saying well wait a second. If we do what you say then the pledge would be unconstitutional and they don't like that. Not necessarily. In Allegheny County for instance talking about the context of the creche cases and once they found the creche to be constitutionally OK in Allegheny they found the creche not to be constitutionally OK. There are some people say the only difference is that there was a roof over one that wasn't a roof over the other one but leave that as a snide remark rather than a constitutional analysis. In that case in Allegheny County they said the creche is not OK whilst the pledge is OK. They used the pledge as a benchmark a sort of a gold standard of what was permissible use of religion or presence of God in a governmental act whilst the creche in the courthouse was not. Isn't that a little bit more weighty than just mere dicta? First of all when Justice Blackmun referred to the pledge he said we have considered this in dicta. I think this is a dictum about dicta. I think that takes away a lot of its persuasive weight and what he was saying is this is different basically. As a matter of fact... No, it's different, it's OK. Well, he discussed in the National Day of Prayer he mentioned that that looks OK but he says while that is not before us we make no judgment on its constitutionality. The pledge certainly was no further before than the National Day of Prayer. It was a mention and again he was trying to get a plurality. He had five separate opinions nobody agreed with anything on anything and when there's an objection saying well, what about the pledge? He says OK, well, we'll throw that out. Yeah, OK, that's OK for now. I think they need to have an analysis and as Justice Thomas said clearly as a matter of our precedent the pledge policy is unconstitutional. Again, we have those other cases where it was mentioned about prayer you don't need prayer. Stone v. Graham wasn't prayer. Edwards v. Aguilar wasn't prayer. Epperson v. Arkansas wasn't prayer. What you need is a violation of the neutrality which Lee clearly had. You look at the lemon test we can look at the purpose. What is the purpose? Congress told us the purpose. They said the inclusion of God in the pledge therefore. And notice they didn't say the phrase under God. They said God, that entity. The inclusion of God in the pledge therefore further acknowledges the dependence of our people and our government upon the moral directions of the Creator. Sounds to me like that's talking about acknowledging dependence on the Creator and deny the atheistic concepts of communism. They were saying we like belief in God we don't like atheism. They can't do that as a member under the Establishment Clause. The President of the United States Dwight D. Eisenhower as he signed the bill into law said from this day forward the millions of our school children will daily proclaim their dedication of the nation and the people to the Almighty. Proclaiming dedication is pure prayer I would say. And President Bush says the same thing. President Bush says in the Pledge of Allegiance we humbly seek the wisdom and blessing of divine providence. I don't think there's a better definition for prayer than to humbly seek the wisdom and blessing of divine providence. So we have a lot of people Congress, two Presidents saying they think it's prayer. We have people not and you don't need prayer. Mr. Nutter give me the names of the cases again that said that the argument by your opponent about the philosophical God is not correct. Sorry say that one more time. That God means religion and not a philosophical concept. I think everyone interprets God as meaning God. But you said there were cases in which they said it's not a scientific or a philosophical. In the Supreme Court? If he said that I missed it I'm sorry. I don't know of any. So as a matter of fact all I know is the opposite. That God is God. And four of our current Supreme Court Justices said mentions of God are clearly religious. So including Justice Scalia. We can continue on the other test the endorsement test. Clearly this endorses the idea that there's a God when we say we are a nation under God especially in the context of the school. We have children six years old. I think this child was when I... How do you square the concurrent opinion of Justice O'Connor? If anybody would identify with the endorsement test she certainly was. And she says that in her concurrent opinion no doubt that the pledge is ceremonial deism and is not an endorsement of religion. Yes she did. And she was alone in that opinion. I'll mention she's no longer on the court and I'll mention that it also contradicts everything she said before that. She said when government acts it should not engage in a practice that all citizens do not share. She also said here's what we're going to do before the Newdow case, the Elk Grove case. What she said is here's the criteria. We're going to look at the text. The text of the Act of 1954 is purely religious. She said let's look at the implementation. As the flag ran up the flagpole they played onward Christian soldiers marching as to war with the cross of Jesus going on before. I think by her standards that clearly violated the endorsement test. Then she came up and it seems that she didn't want to rule in that direction. She signaled to everybody while it remains a close case so I think we know that there was some component on her part that maybe doubted what she was saying. Then she comes up with these unique it was like I don't mean to insult Justice O'Connor but it looks like she was saying how can I rule that this thing is okay. She didn't come up with the concept of ceremonial deism. That was in the dissent by Justice Brennan in Lynch v. Donnelly. Justice Brennan, there have only been three people who have used ceremonial deism that term. Justice Brennan said while I remain uncertain perhaps this can be considered as ceremonial deism. He was referring to a footnote where a book review was footnoted I don't even know if that was the term and whatever it meant it meant something that had no religious significance that had no religious value. Clearly under God and the pledge has religious value as is identified by the reaction that we saw when this circuit came out with the initial pledge ruling. It has tons of religious significance that's why everyone gets so angry when we discuss treating people fairly and taking it out. Then the other person who referenced ceremonial deism was Justice Blackmun in Allegheny County and he said the same thing it will only apply if there's no religious significance and I don't think anyone can argue that this has no religious significance. Certainly the amici here haven't argued that they say quite the contrary it means that we depend on God. Well you mentioned that Justice O'Connor was no longer in the court nor is Justice Brennan or Black does that mean that we can ignore what they say? No, but I think it means that we can accept that if this case got back to the Supreme Court that view might not be upheld since there was no one else in concurrence with her. Well you couldn't ignore what they or discount what they say if it were an opinion of the court. Correct, and this was just a concurrence. Maybe give less weight to their dictum if you're trying to count up the votes but if I were you I wouldn't try to count up the votes anyway. I'm not convinced, Your Honor. You know, they've never been briefed they've never heard the arguments and I think that there's definitely four votes there and I'm not sure there are many more we haven't heard from a couple of the Justices on that issue. Justice Alito during his confirmation hearings he had a discussion I wouldn't pay much attention to what they said but his principle the point was pretty well taken he said often there are conflicting freedoms and that makes the case difficult and I agree with that 100%. What's the conflicting freedom here? There's one group saying please treat us equally and the other freedom that we're talking about is please let us use the government to do our religious bidding they can worship under God they want all they want they can in public school say I think it's Jesus or God or anything else what they can do is get the government to do their religious bidding they can't use the machinery of the state to get that message across and that's all I'm asking for so I don't think I need much more time unless the Court has more questions basically this is not a case of people who believe in God versus people who don't believe in God it's a case of people who believe in one realm, religion which the Constitution so wonderfully protects and I hope this Court will go for equality. Thank you Mr. Neubat. Thank you. With respect to the lineup we have the Supreme Court's statement in Engel that even in the school context children can be encouraged to recite patriotic hymns and anthems that contain ceremonial acknowledgments of God we have the Supreme Court's use in Lynch as Judge Bea mentioned of the pledge not only in the abstract but the recitation of the pledge by school children as one of the baseline historic practices against which the creche was invalidated and we have the majority opinion in Allegheny which referenced back to the acceptance of the pledge in Lynch. We have every concurring opinion or dissenting opinion to have addressed the issue including that of three Justices in Elk Grove that of the author of the endorsement test Justice O'Connor not only in Elk Grove but going all the way back to Wallace versus Jaffrey and indeed Justice Brennan in Shemp as well. The only disagreement Mr. Newdow can point to with respect to the pledge among the Justices is whether one or another of several abstract doctrinal formulations would result in invalidation of the pledge. Some Justices say a particular abstract doctrinal formulation would result in invalidation of the pledge and therefore the doctrine must be wrong. Other Justices say the abstract formulation would not result in invalidation of the pledge and therefore the abstract doctrine must be fine. With respect to the constitutionality of the pledge there is unanimous agreement and that agreement as Judge Motz recognized in the Fourth Circuit case is a much more reliable basis to rule on than abstract formulations in an area of law that is context specific and doctrinally uncertain. With respect to coercion But what you're saying is we should try to predict what the Supreme Court's going to do. No, I'm saying you should look at It hasn't done it. Judge Reinhart, I'm saying you should look at specific you should prefer specific statements about the pledge or things like the pledge in majority opinions and concurrences and dissents over Over case law. No, over abstract statements about the endorsement test or the lemon test. In Lynch the court court applied lemon, the lemon test but in the course of doing so made clear that the lemon test would not invalidate the pledge. That's a majority opinion that you can fairly rely on. With respect to coercion unless the pledge is akin to a prayer any coercive effects that school children might feel are not constitutionally significant because Engle tells us that with respect to patriotic exercises the government can encourage can espouse patriotic values reflected in documents like the Declaration of Independence and the National Anthem and can encourage children to espouse them. We submit that the pledge is more akin to the Declaration and the National Anthem than it is to things like the Lord's Prayer or the Ten Commandments. Thank you very much. I'm going to make this very brief. I think the issue has been clouded. I think the issue today before this court is whether the school district policy meets the Establishment Clause and is constitutional and we submit that it is. We know that there are no guidelines that say references to God have to be time specific. They can only be in the past. They can also be in the future. There is no least restrictive means test with respect to the Establishment Clause. The courts have accepted ceremonial deism when in the context of the district policy in this case, the State Education Code and the various content provisions for the teaching of the historical patriotism in our country, this policy meets the Establishment Clause and is constitutional. We know that... Let me ask, why do you think this is teaching patriotism? Why do the children have to make their own pledge? Nobody would complain if you taught the history of the country and taught the role that God played in the history of the country. How does that justify making little children pledge to something under God? They're not pledging to God, Your Honor. They're pledging to our flag and to our country. I pledged to the flag for many years. When I grew up and said the Pledge of Allegiance, I used to pledge to all the patriotic things you're talking about. But they specifically put under God in there so that the children could pledge to the flag  And that's the basis upon which our country was founded in the Declaration of Independence. That simply fortifies the historical tradition that was already in place for 200 years. And I would respectfully submit, Your Honor, that when that is in the context of a teaching program, it is the teaching program that teaches tolerance and acceptance. And if a child opts out, let the teacher do its job and teach tolerance and acceptance. And if there's a conflict, resolve the conflict and explain why some children may recite it and some children may not. I respectfully submit. Thank you. Okay. A little over a minute. Thank you, Your Honor. The philosopher's God is the God of the Declaration of Independence, the God of Jefferson's Bill for Establishing Religious Liberty, the God of Madison's Remoral Remonstrance, the God who is touched on lightly in the Constitution with the blessings of Secure the Blessings of Liberty and in the background of the Ninth and Tenth Amendments. He's the God of the Declaration of the Pledge of Allegiance, too. Saying one nation under God is just elegant code for saying that we are a nation whose government must respect its people's rights because of where they come from. Are you suggesting that philosopher God's definition was responsible for the concept of natural rights? It's necessary to the concept of natural rights, Your Honor. You couldn't have a natural rights argument without a philosopher. Right. Without a philosopher God. And the philosopher's God also took it out of the category of being sectarian. So when the Supreme Court comes along to say in Engel and Shemp, one and the same moment, they're banning school prayer and banning school devotional Bible reading. One and the same moment they're saying, but we're not talking about the God talk that's built into the patriotism thing. What they're clearly referring to is the philosopher's God that is the premise for our theory of rights. We can still talk about where our theory of rights come from and the only way to invoke that is by invoking the premise. Thank you, counsel. Thank you. The case just argued will be submitted.
judges: Nelson, Reinhardt, Bea